UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARPENTERS PENSION TRUST, et al. | No. C-13-01063 DMR |
| Plaintiff(s), | **ORDER RE: JOINT DISCOVERY LETTER [DOCKET NO. 47]** |
| v. | |
| LINDQUIST FAMILY LLC, et al. | |
| Defendant(s). | |

Before the court is a joint discovery letter filed by Plaintiffs Carpenters Pension Trust Fund for Northern California and its Board of Trustees and non-party Lauren Bockmiller, in which Plaintiffs seek an order compelling Bockmiller to produce documents responsive to a subpoena duces tecum served upon her by Plaintiffs.[1] [Docket No. 47.] For the reasons stated below as well as at the April 10, 2014 hearing, Plaintiffs' motion to compel is **granted in part**.

## I. BACKGROUND

Plaintiff Carpenters Pension Trust Fund for Northern California is an employee pension benefit plan and a multiemployer plan within the meaning of 29 U.S.C. §§ 1002(2) and (37). Complaint [Docket No. 1] at ¶ 4. Pursuant to collective bargaining agreements, various employers are obligated to contribute to the pension fund on behalf of their covered employees. *Id.* at ¶ 4. Plaintiff Board of Trustees administers the pension fund. *Id.* at ¶ 5.

---

[1] Bockmiller is a member of Defendant Lindquist Family LLC (the "LLC").

1   Defendant Mark Alan Lindquist owns an unincorporated real estate business which at all
2   relevant times was under common control with the M.A. Lindquist Company (the "company"). *Id.*
3   at ¶ 16. Until approximately April 2006, the company was signatory to one or more collective
4   bargaining agreements requiring contributions to the pension fund. *Id.* at ¶ 9. In April 2006, it
5   withdrew from the pension fund pursuant to 29 U.S.C. § 1381 et seq., incurring withdrawal liability.
6   *Id.* at ¶¶ 11-20. Plaintiffs subsequently obtained judgments against the company and Mark Alan
7   Lindquist for unpaid principal withdrawal liability, liquidated damages, interest, and attorneys' fees
8   and costs. *Id.* at ¶¶ 14-15, 18-20. *See also Carpenters Pension Trust Fund et al. v. M.A. Lindquist*
9   *Co., Inc.*, No. 10-cv-812-SC (N.D. Cal., filed Feb. 26, 2010); *Carpenters Pension Trust Fund et al.*
10  *v. Mark Lindquist*, No. 10-cv-3386-SC (N.D. Cal., filed Aug. 2, 2010).

11   Mark Alan Lindquist is a member of Defendant Lindquist Family LLC (the "LLC"). The
12  other members of the LLC are his sisters Lauren Bockmiller and Leslie Ward, his mother Defendant
13  Elsie Lindquist, and his brother Kurt Lindquist. Each member owns twenty percent of the LLC.
14  Letter at 7. According to Bockmiller, the LLC and Elsie Lindquist made a series of loans to Mark
15  Alan Lindquist starting before the year 2000. Letter at 7. At the end of 2013, Mark Alan Lindquist
16  owed $418,812.21 to the Lindquist Family LLC and $352,465.75 to Elsie Lindquist. Until
17  December 2010, these debts and the promise to repay were not evidenced by contracts or promissory
18  notes. Letter at 7. However, between approximately December 2010 and June 2011, Mark Alan
19  Lindquist and Elsie Lindquist (on behalf of the LLC) signed several promissory notes and pledge
20  agreements, and the LLC filed UCC statements with the California Secretary of State. Complaint at
21  ¶¶ 21 -25. According to Bockmiller, through these instruments, Mark Alan Lindquist attempted to
22  pledge his interest in the LLC as security for repayments of the earlier debts to the LLC and Elsie
23  Lindquist. Letter at 7.

24   On March 8, 2013, Plaintiffs filed this action for declaratory relief seeking a declaration that
25  those promissory notes and pledge agreements, and the UCC filings related thereto, constituted
26  transactions to evade or avoid withdrawal liability that therefore must be disregarded in Plaintiffs'
27  efforts to collect withdrawal liability from Mark Alan Lindquist.

28   **II. DISCOVERY DISPUTES**

2

On September 3, 2013, Plaintiffs served a subpoena on Bockmiller.  Bockmiller withheld documents created after December 31, 2011, on the basis that they cannot be relevant to whether the purpose of the June 2011 transactions was to evade or avoid withdrawal liability.  She also withheld certain documents on the basis of attorney-client privilege.

**A.  Temporal Scope**

Plaintiffs argue that the temporal scope of the document production should extend until March 8, 2013 (the date this action was filed).  Plaintiffs state that Bockmiller has refused to produce documents created after June 30, 2011.  Letter at 1.  Plaintiffs argue that documents created after the promissory notes and pledge agreements were signed in June 2011 could be relevant to show that those notes and agreements were created to avoid withdrawal liability.  Bockmiller argues that documents created after the June 2011 transactions are not relevant to whether the transactions were made to avoid withdrawal liability, but has nonetheless produced nonprivileged emails for the period March 16, 2011 to December 31, 2011.

For the reasons stated at the hearing, the court finds that documents dated from 2012 to March 8, 2013 could be relevant to Plaintiffs' claims and are thus discoverable.  Accordingly, Bockmiller shall produce responsive documents falling within this date range to Plaintiff by **April 14, 2014**.  Portions of those documents which Bockmiller asserts are privileged may be redacted as directed by the court at the hearing.  Any documents or portions of documents withheld on the basis of privilege must be described in a privilege log.  If there are any disputes about these documents, the parties shall meet and confer and file a joint discovery letter by close of business on **April 30, 2014**.

**B.  Attorney Client Privilege**

On December 11, 2013, Defendants' counsel (who also represents Bockmiller in connection with the subpoena) served a revised privilege log on Plaintiffs.  This privilege log lists 15 email exchanges that were withheld on the basis of attorney client privilege.  Counsel for the LLC are Tim Winchester and Charles (Chuck) Toombs of the McInerney & Dillon firm.  Privilege Log [Docket No. 34] at 2.  Bockmiller agreed to withdraw her assertions of privilege and produce Items 12-15

without redactions. Plaintiffs did not dispute the assertion of privilege over Items 6 and 10. Thus, the only disputed assertions of privilege regard Items 1-5, 7-9, and 11.[2]

### 1. Applicable Law

"The burden is on the party asserting the privilege to establish all the elements of the privilege." *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* at 999 (quoting *Weil v. Inv./ Indicators, Research & Mgmt., Inc.* 647 F.2d 18, 24 (9th Cir. 1981). "Wigmore on Evidence describes the several elements of the privilege this way: (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *Id.* (quoting 8 Wigmore, Evidence § 2292, at 554 (1961)).

### 2. Waiver

Plaintiffs argue that because only Elsie Lindquist is the managing member of the LLC, communications (1) between the LLC's attorneys and other members of the LLC or (2) received by Elsie Lindquist and then forwarded to the other members of the LLC qualifies as an intentional disclosure of a privileged communication, which waives the privilege. *See* Fed. R. Evid. 502(a). Bockmiller argues that all members of the LLC who had a role in managing the LLC may assert the attorney-client privilege, not just Elsie Lindquist, so that the communications described above do not constitute intentional disclosure.[3]

---

[2] Bockmiller agreed to produce Items 4 and 8 with redactions. The court has reviewed these documents in camera and determines that some of redactions Bockmiller has marked on Item 4 contain information not protected by a privilege, as discussed below.

[3] In an order dated January 17, 2014, the court explicitly ordered briefing on this issue. *See* Docket No. 42 at 2 ("If the parties continue to dispute whether the attorney-client privilege protects information disclosed by members of an LLC to other members, or by the LLC's attorneys to nonmanaging members of the LLC, any joint discovery letter must fully brief the issue, including by discussing case law on the matter and explaining the management and decisionmaking structure of the Lindquist Family LLC."). Despite the order, Plaintiffs failed to cite to any cases in support of their position on this issue.

"An LLC is a relatively new hybrid business entity that has the characteristics of both a corporation and a partnership, but is not characterized as either." *Montgomery v. eTreppid Technologies, LLC*, 548 F. Supp. 2d 1175, 1180 (D. Nev. 2008) (citing *Lattanzio v. COMTA,* 481 F.3d 137, 140 (2d Cir. 2007)). "While LLCs offer members the same protection from personal liability as corporations offer their shareholders, unless otherwise indicated, LLCs are generally treated as partnerships for tax purposes." *Id.* (citations omitted). The application of attorney-client privilege to members of an LLC is a relatively uncharted area of law. *See id.* at 1179 ("[W]hether eTreppid, as an LLC, should be treated as a corporation or a partnership for the purposes of the attorney client privilege . . . is an issue of first impression."). The *Montgomery* court found "no case law, state or federal, that is directly on point," and it does not appear that Ninth Circuit has considered the issue. *Id.*

Bockmiller urges the court to apply the law of partnerships to determine whether attorney-client privilege operates to protect communications between McInerney & Dillon lawyers and other members of the LLC besides Elsie Lindquist. However, the case it cites actually notes that the distinction between a partnership and a corporation is moot for purposes of determining how to apply the attorney-client privilege because "under federal common law, partnerships and limited partnerships are treated as corporations for purposes of the attorney-client privilege." *Montgomery,* 548 F. Supp. 2d at 1181. The *Montgomery* court found that federal and state courts have generally applied the law of corporations to LLCs for purposes of piercing the corporate veil, the "alter ego" doctrine, the "business judgment rule," and derivative actions, and have also treated LLCs as corporations for the attorney-client privilege. *Id.* at 1179. It concluded that LLCs "are most analogous to corporations; therefore the law of corporations applies for purposes of the attorney-client privilege." *Id.* at 1182.

The court will follow *Montgomery* and apply corporations law to determine whether disclosure of attorney-client communications to other members of the LLC besides Elsie Lindquist defeats the assertion of privilege. In doing so, the court must consider the scope of the LLC member's duties and whether that member was aware that the information was furnished to enable the attorney to provide legal advice to the LLC. *See Admiral Ins. Co. v. U.S. Dist. Court for Dist. of*

*Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989) (in the corporate setting, attorney-client privilege applies to communications with any corporate employee when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation) (citing *Upjohn v. United States,* 449 U.S. 383, 394, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981)).

Plaintiffs argue that Elsie Lindquist testified that she was the sole manager of the LLC. Bockmiller concedes that Elsie Lindquist is "nominally the Manager of the Family LLC," but avers that the members of the LLC make decisions on a consensus or joint basis. Letter at 6. The court has reviewed the relevant documents in camera. The documents show that Bockmiller, Ward, Kurt Lindquist, and Elsie Lindquist, or combinations thereof, all communicated with each other and with the LLC's attorneys about legal advice relating to the LLC's business. The documents also show that Elsie Lindquist was not solely responsible for the decisions of the LLC, as Bockmiller, Ward, and Kurt Lindquist appear to play a significant role in the management of the LLC.

Accordingly, the court finds that Bockmiller, Ward, and Kurt Lindquist, as managing members of the LLC, may assert that their communications with the McInerney & Dillon firm and with Elsie Lindquist are protected by the attorney-client privilege. *Accord Montgomery*, 548 F. Supp. 2d at 1187 (holding that "current management [of an LLC] may assert or waive" the attorney-client privilege to withhold documents sought by a dissident member of the LLC who no longer occupied a management role). The disclosure of confidential information received by one managing member of the LLC to another managing member does not, by itself, defeat the attorney-client privilege.

### 3. Non-Confidential Information and/or Disclosure in Privilege Log

Having conducted an in camera review, the court finds that portions of Items 2, 4, 6, 7, 9, 10 and 11 convey non-confidential information that are not protected by the attorney-client privilege and that should be produced. These portions are as follows:

| Item | Non-confidential Information To Be Produced |
|------|---------------------------------------------|

| | |
|---|---|
| 2 | 4/25/11 9:04 p.m. email from Kurt Lindquist to Lauren Bockmiller<br>4/26/11 9:30 a.m. email from Lauren Bockmiller to Kurt Lindquist<br>4/26/11 9:46 a.m. email from Kurt Lindquist to Lauren Bockmiller (first two lines)<br>4/26/11 10:08 a.m. email from Lauren Bockmiller to Kurt Lindquist |
| 4 | 5/10/11 6:58 p.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist<br>5/12/11 8:08 a.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward<br>5/12/11 8:31 a.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist<br>5/12/11 1:21 p.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist |
| 6 | 5/11/11 7:40 a.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward<br>5/11/11 1:28 p.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist<br>5/11/11 1:30 p.m. email from Lauren Bockmiller to Kurt Lindquist and Leslie Ward<br>5/12/11 8:06 a.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward |
| 7 | 5/16/11 9:36 a.m. email(s) from Kurt Lindquist to Lauren Bockmiller and Leslie Ward (portion beginning "She was all mad . . ." and ending "Your thoughts?")<br>5/16/11 10:04 a.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist |
| 9 | 6/6/11 2:09 p.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward<br>6/6/11 3:00 p.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist (portion beginning "Yeah, I'm not giving . . ." to "Oh boy."<br>6/6/11 3:46 p.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward (beginning of email through list item 3) |
| 10 | 6/6/11 4:13 p.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward (beginning of email through " . . . from mom's house?")<br>6/6/11 4:20 p.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist<br>6/6/11 4:22 p.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist<br>6/6/11 4:28 p.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward<br>6/6/11 4:43 p.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist<br>6/6/11 4:46 p.m. email from Leslie Ward to Lauren Bockmiller<br>6/7/11 8:56 a.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward (portion beginning "Any luck . . ." to ". . . some pre-July 4th fireworks!")<br>6/7/11 9:36 a.m. email from Lauren Bockmiller to Kurt Lindquist<br>6/7/11 12:09 p.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist |
| 11 | 6/7/11 2:13 p.m. email from Leslie Ward to Lauren Bockmiller and Kurt Lindquist<br>6/7/11 2:25 p.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward |

Furthermore, portions of Items 4 and 7 are described in such detail in the Privilege Log so as to constitute a voluntary disclosure and a waiver under Federal Rule of Evidence 502(a) of any privilege that could have been asserted. These portions are as follows:

| Item | Voluntarily Disclosed Information To Be Produced |
|---|---|
| 4 | 5/12/11 11:52 a.m. email from Lauren Bockmiller to Tim Winchester |
| 7 | 5/16/11 4:38 p.m. email from Kurt Lindquist to Lauren Bockmiller and Leslie Ward |

### III. CONCLUSION

7

For the reasons stated above, Plaintiffs' motion to compel the production of documents from Bockmiller is **granted in part**. Bockmiller shall produce responsive documents dated from 2012 to March 8, 2013 to Plaintiff by **April 14, 2014**. Any documents or portions of documents withheld on the basis of privilege must be described in a privilege log. If there are any disputes about these documents, the parties shall meet and confer and file a joint discovery letter by close of business on **April 30, 2014.** Bockmiller shall also produce the unprivileged portions of Items 2, 4, 6, 7, 9, 10 and 11 by **April 25, 2014.**

IT IS SO ORDERED.

Dated: April 18, 2014

DONNA M. RYU
United States Magistrate Judge