United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; and BOARD OF TRUSTEES, CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>            Plaintiffs,<br><br>    v.<br><br>LINDQUIST FAMILY LLC, MARK LINDQUIST, and ELSIE HELEN LINDQUIST,<br><br>            Defendants. | Case No. 13-cv-01063-SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES |

## I.  INTRODUCTION

Now before the Court is the above-captioned Plaintiffs' motion for attorneys' fees.  The motion is fully briefed[1] and appropriate for determination without oral argument per Civil Local Rule 7-1(b).  For the reasons set forth below, Plaintiffs' motion for attorneys' fees is GRANTED in part and DENIED in part.

///

///

_____

[1] ECF Nos. 76 ("Mot."), 79 ("Opp'n"), 82 ("Reply").

**United States District Court**
For the Northern District of California

## II.  BACKGROUND

This is a declaratory judgment action in which Plaintiffs Carpenters Pension Trust Fund for Northern California (the "Carpenters Fund") and Board of Trustees, Carpenters Pension Trust Fund for Northern California (collectively "Carpenters" or "Plaintiffs") sought a declaration from the Court that Defendants had engaged in a transaction with a primary purpose of evading liability under the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").  29 U.S.C. § 1381, et seq.  On June 10, 2014, the Court granted Plaintiffs' motion for summary judgment.  ECF No. 73 ("SJ Order").  That order also provides a detailed factual background of the case that the Court will not repeat here. Plaintiffs now move for attorneys' fees, and Defendants oppose the motion.

## III.  LEGAL STANDARD

Plaintiffs brought this action in connection with a separate lawsuit seeking withdrawal liability under the MPPAA.  Section 4301(a)(1) of the MPPAA provides a right of action for a "plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under" the MMPAA.  29 U.S.C. § 1451(a)(1).  Section 4301(e) provides for the discretionary award of attorneys' fees to the prevailing party. Id. § 1451(e).

The Ninth Circuit has developed a set of factors relevant to the grant of attorneys' fees authorized under the Employee Retirement Income Security Act of 1974 ("ERISA").  Those factors apply to attorneys' fees sought under the MPPAA as well.  See

**United States District Court**
For the Northern District of California

1   *Cuyamaca Meats, Inc. v. San Diego & Imperial Counties Butchers' &*

2   *Food Emp'rs' Pension Tr. Fund*, 827 F.2d 491, 500 (9th Cir. 1987).

3   Thus, in deciding whether to award attorneys' fees under the MPPAA,

4   courts consider

6       (1) the culpability or good faith of the opposing party;
7       (2) the ability of opposing party to pay the award fees;
        (3) the degree of deterrence which would result from an
        award of fees; (4) whether a number of participants under
8       an ERISA plan would benefit from an award of fees; and
        (5) the relative merits of the parties' positions.

9   *Id.* (quoting *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th

10  Cir.1980)).  "No one of the *Hummell* factors, however, is

11  necessarily decisive, and some may not be pertinent in a given

12  case." *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410,

13  1416 (9th Cir. 1984).

14      Reasonable attorneys' fees are determined by the "lodestar

15  method," which is obtained by multiplying the number of hours

16  reasonably expended on litigation by a reasonable hourly rate.

17  *Hensley v. Eckerhart*, 461 U.S. 424 (1983). In determining the

18  appropriate number of hours to be included in a lodestar

19  calculation, the Court should exclude hours "that are excessive,

20  redundant, or otherwise unnecessary." *Id.* at 434.

21

22  **IV.  DISCUSSION**

23      **A.   Underlying Separate Action and Lack of Monetary Award**

24      Defendants first point out that the MPPAA liability relevant

25  to this case "stems from a judgment against Mark Lindquist

26  personally . . . ."  Opp'n at 1.  Defendants also advise the Court

27  that this case is a solely declaratory relief action, and that

28  therefore Plaintiffs sought no monetary award.  *Id.* at 2-4, 6.

3

**United States District Court**
For the Northern District of California

1  These do not appear to be legal arguments against the award of

2  attorneys' fees: they appear in the introduction section of

3  Plaintiffs' brief and are unsupported by any legal authority.

4  However, the Court discusses them for completeness and because the

5  second argument, at least, is reiterated (very tersely) in the

6  argument section of the opposition brief.

7      Section 4301(a)(1) of the MPPAA provides that:

8

9      A plan fiduciary, employer, plan participant, or
       beneficiary, who is adversely affected by the act or

10     omission of any party under this subtitle with respect to
       a multiemployer plan, or an employee organization which
       represents such a plan participant or beneficiary for

11     purposes of collective bargaining, may bring an action
       for appropriate legal or equitable relief, or both.

12

13  29 U.S.C. § 1451(a)(1).  The MPPAA specifically authorizes a civil

14  action against <u>any party</u> whose act adversely affects a plan

15  fiduciary.  The Act, therefore, does not limit civil actions to

16  those against persons who are directly liable to a plan.  The Court

17  has already determined that Plaintiffs were adversely affected by

18  Defendants' attempts to shield Mark Lindquist's assets from

19  Plaintiffs' judgment against him.  Nor does Section 4301(a)(1)

20  limit the actions it authorizes to actions for monetary damages; it

21  specifically authorizes actions for "appropriate legal or equitable

22  relief, or both."  Therefore, neither the fact that Plaintiffs'

23  judgment in the underlying action is not against Defendants nor the

24  fact that Plaintiffs sought only equitable relief in this action is

25  a reason that Plaintiffs are not entitled to attorneys' fees.

26     **B.    <u>The Hummell Factors</u>**

27         **1.    <u>Culpability or Good Faith of Opposing Party</u>**

28     First, the Court examines Defendant's culpability or good

4

**United States District Court**
For the Northern District of California

faith.  In granting summary judgment for Plaintiffs, the Court found that Defendants engaged in a transaction with a primary purpose of evading liability under the MPPAA.  <u>See</u> SJ Order at 10-15, 18.  Correspondence between members of the Lindquist family demonstrates that they acted expressly to prevent Plaintiffs from collecting on the judgment that the Court awarded in the original lawsuit against M.A. Lindquist Co., Inc., and Mark Lindquist individually.[2]  <u>See id.</u>  The Court has therefore already found that Defendants are culpable in this case.  Their express intention of preventing Plaintiffs from collecting on their judgment demonstrates their bad faith.  Defendants do not contest that this factor favors Plaintiffs.

### 2.    <u>Ability of Opposing Party to Pay Fees</u>

Next, the Court turns to Defendants' ability to pay the fees. Plaintiffs seek $70,065.00 in fees.  Mot. at 9.  The Lindquist Family LLC's holdings demonstrate that its assets are more than sufficient to pay the fees owed.  ECF No. 76-1 ("Kirchner Decl.") Ex. C (filed under seal).  Defendants do not dispute this factor, either.  Accordingly, the Court finds that this factor weighs in favor of awarding attorneys' fees.

### 3.    <u>Degree of Deterrence</u>

Third, the Court examines the degree of deterrence that would result from an award of fees.  An award of fees in this case would

---

[2] As further evidence of Defendants' bad faith, Plaintiffs cite an email from Kurt Lindquist to his siblings in which Kurt wrote, "It seems that a judge Conti from the 9th Jerk-it Court of Schmeals [sic], just 2 days ago, granted a motion for summary judgement [sic] in the amount of $1,447,714 against our big bro [Mark Lindquist]!"  Mot. at 3.  However, Kurt's ill-will towards the Court is not relevant; it is Defendants' bad faith in executing the transactions underlying these lawsuits that matters here.

**United States District Court**
For the Northern District of California

1   likely provide some degree of deterrence against similar efforts to

2   shield assets from MPPAA judgments.  The Ninth Circuit has also

3   tied this factor to the first, holding that, in cases where the

4   losing party acted in good faith, the court should not wish to

5   deter similar actions.  <u>See</u> <u>Simonia v. Glendale Nissan/Infiniti</u>

6   <u>Disability Plan</u>, 608 F.3d 1118, 1122 (9th Cir. 2010).  By contrast,

7   Defendants in this case acted in bad faith, and the Court therefore

8   seeks to deter similar acts in the future.  It is difficult to

9   estimate exactly how much deterrence will result, but it is safe to

10  say that this factor weighs at least slightly in favor of awarding

11  fees.

12          **4.   Whether a Number of Participants Would Benefit**

13          Fourth, the Court considers whether an award of attorneys'

14  fees would benefit a number of participants in the plan.

15  Plaintiffs argue that this factor favors them because "any award of

16  attorneys' fees in favor of the Pension Fund will ultimately

17  benefit its participants." Mot. at 4.  Presumably, the less that

18  the Carpenters Fund has to pay its lawyers, the more it will be

19  able to pay its participants.  <u>See</u> <u>id.</u>  Indeed, this factor seems

20  to favor an award of fees in cases, like this one, where the

21  plaintiffs include a pension fund or a group of beneficiaries,

22  rather than an individual beneficiary, and where the pension fund

23  or beneficiaries prevail.  Defendants do not dispute those

24  arguments.  The Court finds that this factor, too, favors

25  Plaintiffs.

26          **5.   Relative Merits of the Parties' Positions**

27          Fifth and finally, the Court weighs the relative merits of the

28  parties' positions.  The Court granted summary judgment in favor of

6

**United States District Court**
For the Northern District of California

1   Plaintiffs because "the evidence presented demonstrate[d]

2   unequivocally that avoiding liability under the MPPAA was a primary

3   purpose" of Defendants' actions.   SJ Order at 14.   The Court also

4   held that "there is exactly one reasonable interpretation of this

5   evidence": that Defendants intended to evade liability under the

6   MPPAA.   <u>Id.</u> at 12-13.   The merits of Plaintiffs' position is

7   therefore very strong, and the merits of Defendants' is weak.   This

8   factor, too favors awarding attorneys' fees.

9           **6.   <u>Plaintiffs Are Entitled to Attorney's Fees</u>**

10      Because all five <u>Hummell</u> factors weigh in favor of awarding

11  attorneys' fees, the Court finds that Plaintiffs are entitled to

12  recover fees in this case.   Defendants do not contest that holding,

13  but they do argue that Plaintiffs should not be awarded the full

14  amount of fees sought.

15      **C.   <u>Reasonableness of Fees Sought</u>**

16      Having determined that Plaintiffs are entitled to attorneys'

17  fees, the Court turns to the question of the amount to award.

18  Plaintiffs seek reimbursement for five attorneys' (George M. Kraw,

19  Donna L. Kirchner, Katherine McDonough, Katherine M. Niznik, and

20  Carter E. Meader) and two paralegals' work on this case, totaling

21  200 hours and $70,065.00.   Plaintiffs also seek $1,003.04 in costs.

22  Plaintiffs request an hourly rate of $600/hour for Mr. Kraw;

23  $475/hour for Ms. Kirchner; $475/hour for Ms. McDonough; and

24  $275/hour for Ms. Niznik.

25      **1.   <u>Hourly Rates</u>**

26      Defendants argue that the hourly rates Plaintiffs seek are

27  unreasonable.   Defendants' argument focuses on the fees that

28  Plaintiffs sought in the underlying lawsuit for MPPAA liability

**United States District Court**
For the Northern District of California

1   against Mark Lindquist.  In that case, the same plaintiffs were

2   represented by the same law firm -- Kraw & Kraw Law Group ("Kraw &

3   Kraw") -- and some of the same lawyers.  Ms. McDonough, who is an

4   attorney for Plaintiffs in this case, executed a declaration in

5   support of Plaintiffs' motion for attorneys' fees in the action

6   against Mark Lindquist.  ECF No. 80-1 ("Bui Decl.") Ex. B.  In that

7   declaration, Ms. McDonough represented under oath that Kraw &

8   Kraw's fee agreement with the Carpenters Fund "specifies rates of

9   $275 for attorneys with 10 or more years of experience, $225 for

10  attorneys with less than 10 years of experience, and $115 for

11  paralegals for litigation matters." Id. ¶ 4.  Ms. McDonough

12  further stated that "Kraw & Kraw Law Group's hourly fee for this

13  litigation is consistent with prevailing market rates for

14  litigation involving union-sponsored benefit funds." Id. ¶ 6.

15  Therefore, Defendants argue, Plaintiffs' fees should be limited to

16  those hourly rates.

17      Plaintiffs counter that "the question here is what are the

18  current prevailing market rates for similar work, not whether the

19  rates requested are higher than rates the same attorneys previously

20  requested."  Reply at 2.  That mostly is correct[3]; unfortunately

21  for Plaintiffs, Ms. McDonough's declaration in the case against

22  Mark Lindquist stated in no uncertain terms that the fees charged

23  in that case were "consistent with the prevailing market rates for

24  litigation involving union-sponsored benefit funds."  Bui Decl. Ex.

_____

25  [3] One of the cases Plaintiffs submit in support of the
26  reasonableness of their rates considers previous fee awards issued
    by the court to the individual attorney involved.  See Order
27  Granting Attorneys' Fees and Costs, ECF No. 120 at 6, White v.
    Coblentz, Patch, Duffy & Bass LLP Long Term Disability Ins. Plan et
28  al., No. C 10-1855 BZ (N.D. Cal. Oct. 31, 2011).

B ¶ 6.  Thus, the rates requested in the underlying litigation are compelling evidence of the proper hourly rates to award in this action.  Plaintiffs do point to a few ERISA cases in this District in which courts awarded rates comparable to the ones they request. See Mot. at 7.  They also submit a declaration from another practitioner who opines that Ms. Kirchner's rate is reasonable for "any kind of business related litigation."  Kirchner Decl. Ex. A ¶ 2.  However, Plaintiffs make no effort whatsoever to explain the discrepancy between the rates they sought in this case and the rates sought in the underlying litigation, both of which they assert under oath reflect the prevailing market rates.  The Court finds it implausible that the prevailing market rates have increased as dramatically as Plaintiffs claim in the three years since Ms. McDonough submitted her declaration (for Mr. Kraw, at least, this would mean that the market rate has more than doubled). Absent any reliable indication from Plaintiffs as to how market rates have changed since 2011, the Court will apply the rates specified in Ms. McDonough's declaration from the other case, rather than the ones Plaintiffs seek in this case.

Mr. Kraw, Ms. McDonough, and Ms. Kirchner all have ten or more years of legal experience.  See ECF No. 76-2 ("McDonough Decl.") ¶¶ 2-3; Kirchner Decl. ¶ 2.  Those attorneys worked a total of 117.9 hours on this case.  Id. ¶ 10.  At an hourly rate of $275, those attorneys billed $32,422.50.  Ms. Niznik and Ms. Carter have less than ten years' experience.  See id. ¶¶ 4-5.  They worked a total of 42.1 hours on this case.  Id. ¶ 10.  At an hourly rate of $225, those attorneys billed $9,472.50.  Paralegals for the firm worked an additional 40 hours.  See id. ¶¶ 6-7, 10.  At an hourly rate of

1    $115, the paralegals billed $4,600.  Therefore, the Court finds

2    that Plaintiffs are entitled to a maximum of $46,495 in fees.

3         **2.   <u>Reductions Under Hensley</u>**

4        Defendants next argue that Plaintiffs' fees should be reduced

5    because, under <u>Hensley v. Eckhart</u>, some of the fees charged were

6    "excessive, redundant or otherwise unnecessary . . . ."  Opp'n at

7    5.  Defendants assert that the "Court may comply with the rationale

8    of <u>Hensley</u> by applying an 'across-the-board' percentage reduction."

9    <u>Id.</u> at 6.  Strangely, Defendants seem to believe that the Court may

10   reduce Plaintiffs' fees by an arbitrary percentage or dollar

11   amount, and that Defendants need not point to any fees that are

12   unreasonable or even provide any reason that Plaintiffs' fees might

13   be excessive.

14       Defendants proceed to cite two Ninth Circuit cases that are

15   completely inapposite.  In the first, the district court reduced

16   the fee award because the plaintiff prevailed on only one claim,

17   but brought several unsuccessful claims as well.  The court's

18   reduction in that case was based on "its best estimate of the hours

19   spent by [Plaintiff's] lawyers litigating the unsuccessful and

20   unrelated claims."  <u>Schwarz v. Sec'y of Health & Human Servs.</u>, 73

21   F.3d 895, 902 (9th Cir. 1995).  <u>Schwarz</u> has no application here,

22   where Plaintiffs brought only one claim, which was ultimately

23   successful.  <u>Schwarz</u> does not stand for the proposition that a

24   district court may apply an arbitrary "across-the-board" percentage

25   reduction based on unfounded allegations that fees are excessive.

26   Next, Plaintiffs cite <u>Harris v. Marhoefer</u>, in which the district

27   court reduced the fees sought by 50 percent because it found that

28   the plaintiff had only partially succeeded on his claims.  24 F.3d

**United States District Court**
For the Northern District of California

1   16, 18 (9th Cir. 1994).  Again, that principle does not apply here,

2   nor does <u>Harris</u> establish a general rule that courts may

3   arbitrarily reduce fee awards by large percentages.

4        Defendants urge the Court to reduce Plaintiffs' fees by an

5   arbitrary (and unspecified) percentage because "[i]n light of the

6   nature of this case the damages sought, the amount of attorney's

7   fees sought by Plaintiffs is excessive and should be significantly

8   reduced based upon the principals [sic] set forth in <u>Hensley</u>."

9   Opp'n at 6.  Defendants' argument seems to be that because

10  liability was litigated in a separate action, Plaintiffs' attorneys

11  spent excessive time working on this case.  Similarly, Defendants

12  seem to suggest that the hours spent on discovery and preparing the

13  motions for summary judgment and attorneys' fees were excessive.

14  But Defendants provide no basis <u>whatsoever</u> for the Court to make

15  such a determination.  They provide no baseline amount of work in

16  similar cases, nor do they point to any line items in the

17  attorneys' bills that appear unreasonable.  Accordingly, the Court

18  declines to further reduce Plaintiffs' fee award.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**United States District Court**
For the Northern District of California

V. **CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for attorneys' fees is GRANTED in part and DENIED in part.  The Court finds that Plaintiffs are entitled to $46,495 in attorneys' fees. Defendants do not dispute that Plaintiffs are entitled to reimbursement for the reasonable costs of litigation.  Accordingly, Plaintiffs shall submit their bill of costs within fourteen (14) days of the signature date of this Order, as provided by Civil Local Rule 54-1.  Failure to do so will result in a waiver of costs.

IT IS SO ORDERED.

Dated: December 5, 2014                    _____

UNITED STATES DISTRICT JUDGE